**TENANTS OF 1460 EUCLID STREET, N.W., Petitioner,**

v.

**DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, Respondent.**

No. 84–1408.

District of Columbia Court of Appeals.

Argued Sept. 13, 1985.

Decided Dec. 31, 1985.

---

Richard A. Hannibal, with whom John K. Lunsford was on brief, for petitioner.

William J. Earl, Asst. Corp. Counsel, with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C. were on brief for respondent.

Before NEBEKER, NEWMAN and TERRY, Associate Judges.

NEBEKER, Associate Judge:

Petitioner, a tenants association, seeks reversal of the District of Columbia Rental Housing Commission's decision that a voluntary agreement of the tenants to adjust the rent ceiling at their housing accommo-

dation was valid. We hold that the necessary assent of seventy percent of the tenants was not obtained because the spouse of a leaseholder may not, absent express authority, sign the agreement as the leaseholder's agent. Accordingly, we reverse.

I

Petitioner is the tenants association of a rent controlled housing accommodation, the landlord of which is N & R Associates. On December 21, 1981, N & R Associates implemented a twenty percent increase in the rent ceiling pursuant to a written voluntary agreement that was assumed to have been signed by seventy percent of the tenants.[1] One of the tenants who signed the agreement is the wife of the leaseholder of the apartment in which she and her husband reside. Petitioner argues that under D.C. Code § 45–1526 (1981), the only individual who can voluntarily agree to a rent ceiling increase is the tenant obligated to pay rent, i.e., the leaseholder. Thus, petitioner challenges the validity of the voluntary agreement by questioning the spouse's authority to agree to the rent ceiling increase because she is not the leaseholder, and the leaseholder did not expressly authorize her to sign as his agent. Without this signature, N & R Associates has not secured the agreement of seventy percent of the tenants that is a prerequisite to the rent ceiling increase.

The Voluntary Agreement provision, D.C.Code § 45–1526 (1981), requires that "70 percent of the tenants of a housing accommodation" sign the agreement approving a rent increase. In a related section, a tenant is defined as any "person entitled to the possession, occupancy, or the benefits thereof of any rental unit

---

1. The owner of a rent controlled housing accommodation may increase the rent ceiling pursuant to D.C. Code § 45–1526, which provides:

   If 70 percent of the tenants of a housing accommodation sign an agreement filed with the Rent Administrator to have the rent ceiling for all rental units in the housing accommodation adjusted by a specified percentage, the Rent Administrator shall immediately cer-

   tify approval of the increase. The agreement shall include the signature of each tenant, the number of each tenant's rental unit or apartment, the specific amount of increased rent each tenant will pay and a statement that the agreement with the landlord was entered into voluntarily without any form of coercion on the part of the landlord of the housing accommodation.

owned by another person." *Id.* § 45–1503(30). This definitional provision recognizes the tenant's entitlement to such status; it, therefore, confers a legal right "to the possession, occupancy, or the benefits thereof...." Reading the Voluntary Agreement and definitional provisions together, as we must, the Voluntary Agreement provision requires the signature of those individuals who derive certain legal rights from the lease of a rental unit that is owned by another. Clearly, the tenants entitled to and capable of enforcing such rights are leaseholders.

Section 45–1526 also requires that the voluntary agreement specify the "amount of increased rent *each tenant will pay*" (emphasis added). Because the obligation to pay arises out of a lease, the only one who can agree to such an increase is the leaseholder or one expressly acting as his agent. It would strain logic for us to interpret the term "tenant" in § 45–1526, as the respondent concluded, to include any person who occupies a rental unit. It follows that the Voluntary Agreement provision requires the signing party to be the individual entitled to possess or occupy the rental property and obligated to pay rent. For the purpose of § 45–1526, the term "tenant" inescapably means the leaseholder.[2]

Furthermore, there is nothing in the record to indicate that the leaseholder had authorized his wife to sign the voluntary agreement. The mere fact that the signatory to the voluntary agreement was the wife of the leaseholder is insufficient to create an agency by implication. *See Lo Medico v. Simkowitz,* 158 A.2d 681, 682 (D.C.1960) (marital relationship does not create agency per se).

*Reversed.*

2. This conclusion is particularly appropriate in light of N & R Associates' method of calculating the number of signatures needed to meet the 70% requirement. N & R Associates computed the 70% requirement based on the total number of occupied apartments in its housing accommodation. According to respondent's interpretation of the statute, N & R Associates could fulfill the 70% requirement by obtaining one signature per rental unit from any occupant of that unit. Thus, respondent would permit a landlord to use the number of occupied units—clearly the smallest number on which to base its calculation—in computing the 70% requirement and then permit the landlord to obtain the signature of any occupant of a rental unit, thereby drawing from the largest pool of potential signatories.